MAY, J.
The business record exception to the hearsay rule is at the focus of this appeal. Two condominium owners [condo owners] each appeal a final judgment of foreclosure on the condominium association’s [Association] liens for assessed maintenance fees. They argue the court erred in admitting testimony concerning the amount of fees owed because the Association could not verify the amounts due before the new *619 management company took over. We agree and reverse.
These cases involve the foreclosure of two liens placed on two separate condo units by the Association for unpaid maintenance fees. The condo owners, a husband and wife, each owned one of the units. Section 5 of the Association’s bylaws empowered the Board of Directors with charging and collecting assessments from condo owners to defray costs and expenses of maintaining the condo property. Section 9 of the Declaration of Condominium required each owner to share in the assessments and allowed the Association to place a lien on units for unpaid assessments.
The Association’s attorney sent the husband a letter notifying him that his account was overdue, and that he owed $10,174.42 in assessments and collection fees. A similar letter was sent to the wife informing her of a past-due balance of $10,060.40 on her unit. Attached to each letter was an account ledger showing the dates and amounts of the unpaid assessments. The letters informed the condo owners that the Association would place a lien on their units if the assessments were not paid. The Association’s attorney later sent another letter to the condo owners informing them that the Association had recorded a Claim of Lien on their units and that it might foreclose if the past-due amounts were not paid.
The Association filed separate Complaints against the condo owners to foreclose the liens. After the condo owners answered the Complaints, the Association filed a Motion for Summary Judgment of Foreclosure and Determination of Attorney’s Fees and Costs, and filed affidavits in support in both cases. Each condo owner filed an affidavit in opposition.
The affidavits attested that the Association’s records were incorrect, and the wife’s father had made a large advance payment for both units in August 2008. They attested that the error in the condo’s records occurred when it hired a new management company. That company informed the condo owners that payments may have been misapplied and credited to the wrong account. The condo owners requested the previous accountant’s records from the Association, which refused to provide them. The condo owners claimed that they attempted to pay the incorrect amount owed to avoid litigation while the error was corrected, but the Association would not accept the payment.
The condo owners’ affidavits claimed that the issue with their accounts was retaliatory because they were part of a group investigating $100,000 in missing condo funds, and because they would not accept a bribe from one of the directors to stop the investigation. In the “bribe conversation,” the director threatened to tamper with their accounts to cause them to incur tremendous legal expenses.
The affidavits also attested that the director used numerous “scare-tactics” against the condo owners, including the unauthorized use of their assigned parking spaces, making false calls to the police, having the husband’s car towed, discarding the husband’s custom-made awning, refusing to fix damage from a cracked water pipe, and denying them access to the gated community. Attached to the affidavits were several exhibits, including a complaint letter from other condo owners regarding the actions of the Board of Directors, and evidence of investigations into the actions of the Board of Directors.
While the court initially indicated that the hearing was on the Association’s motion for summary judgment, evidence was admitted at the hearing, which took the form of a bench trial. The Association *620 sought to admit an account ledger for the husband’s condo by laying a foundation through an employee of the Association’s management company. The condo owners’ attorney objected based on the lack of foundation for admission of the ledger as a business record. The trial court overruled the objection and admitted the ledger into evidence under the business records exception. The condo owners’ attorney again objected on authenticity and foundation grounds when the Association sought to introduce the ledger for the wife’s account. The trial court again overruled the objection.
At the close of the Association’s case, the condo owners moved for a directed verdict on the ground that the management company’s employee could not testify to account balances that existed prior to her employer’s takeover in 2008. They maintained that, without competent evidence of the account balances prior to the takeover, the Association failed to factually refute their allegations. The Association responded that it was not seeking any past-due balances from before the takeover. The unit owners clarified that the issue was not whether there were past-due amounts prior to the takeover, but rather whether a credit should have carried over after the takeover. The trial court denied the directed verdict.
The husband testified that the advance payment of $18,000 was paid by cashier’s check in August 2008. His proof was in his condo unit, but he no longer had access to his unit. The wife did not testify.[1] The trial court entered a Final Judgment of Foreclosure in favor of the Association in both cases, from which the condo owners now appeal.
On appeal, the condo owners argue that the trial court abused its discretion by admitting the management company’s account ledgers for their units as business records. We agree with the condo owners that the Association failed to establish a proper foundation for admission of the account ledgers as business records.
We review a trial court’s ruling on the admissibility of evidence for an abuse of discretion. That discretion, however, is limited by the rules of evidence. Hayes v. Wal-Mart Stores, Inc., 933 So.2d 124, 126 (Fla. 4th DCA 2006).
Hearsay is a “statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” § 90.801, Fla. Stat. (2012). Hearsay is inadmissible unless it falls within a recognized exception. See § 90.802, Fla. Stat. (2012).
“Florida’s business-records exception appears in section 90.803(6)(a), Florida Statutes.” Yisrael v. State, 993 So.2d 952, 956 (Fla.2008). Section 90.803(6)(a) defines “business record:”
A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or as shown by a certification or declaration that complies with paragraph (c) and s. 90.902(11), unless the sources of information or other circumstances show lack of trustworthiness. The term “business” as used in this paragraph includes a business, institution, associa *621 tion, profession, occupation, and calling of every kind, whether or not conducted for profit.
§ 90.803(6)(a), Fla. Stat. (2012).
The Association’s witness testified that, “[w]hen the accounting records came to us from the prior company, they had listed Frank [Romeo] Senior and Lena as the owners. Until recently, it did not come to light that the actual certificate of title was Frank Romeo [Junior].” When asked whether “[s]ome of the records you received ... were incorrect?” She responded: “But we had no way of knowing that.” The husband testified that the records were incorrect as to the amount of the balance.
Here, the condo owners objected only on the grounds of lack of foundation and authenticity. There was no objection to trustworthiness or accuracy. It is well-settled in Florida that an objection must specify the legal ground upon which a claim is based, and a claim different than that cannot be heard on appeal. Chamberlain v. State, 881 So.2d 1087, 1100 (Fla.2004). Because the condo owners’ attorney did not object to the ledgers on the ground that they were untrustworthy, this issue is not preserved. The lack of foundation, however, was argued and preserved.
To secure admissibility under this [business records] exception, the proponent must show that (1) the record was made at or near the time of the event; (2) was made by or from information transmitted by a person with knowledge; (3) was kept in the ordinary course of a regularly conducted business activity; and (4) that it was a regular practice of that business to make such a record.
Yisrael, 993 So.2d at 956. Here, the Association chose to establish the foundation though a records custodian.
As to the management company’s records, the witness employed all of the “magic words.” She testified that the ledger entries were made at or near the time the charges were incurred, by a person with knowledge of the information, and were kept in the course of business as part of the Association’s business practice. On cross-examination, however, the witness testified that the records prior to the 2008 takeover were maintained by the prior accountant, that she started with an account balance from outside records, that she did not know the prior accountant’s practice and procedure, and that she never worked for that accountant. She could not testify as to the accuracy of the starting balances.
We find this issue similar to the one we encountered in Glarum v. LaSalle Bank National Association, 83 So.3d 780 (Fla. 4th DCA 2011). There, a bank brought a foreclosure action against a borrower. To prove the amount due and owing on the mortgage, the bank offered the affidavit of a “specialist” who worked at the loan ser-vicer. Id. at 782. In opposition to the bank’s motion for summary judgment, the borrower presented the deposition of the same “specialist.” Id. In his deposition, the specialist stated that he determined the amount due and owing from the loan servicer’s computer database. Id. However, the specialist admitted that he “did not know who entered the data into the computer, and he could not verify that the entries were correct at the time they were made.” Id.
We explained that the specialist’s affidavit was inadmissible hearsay because “[h]e relied on data supplied by [the loan servi-cer], with whose procedures he was even less familiar. [He] could state that the data in the affidavit was accurate only insofar as it replicated the numbers derived from the company’s computer system.” Id. at 783. We therefore held that the bank failed to present competent substantial evidence of the amount owed under the mortgage. Id.
*622 Here, the management company’s employee indicated that she could not testify as to the starting balance. She never worked with the prior accountant, and was unfamiliar with how the records were kept. She could not confirm that the prior accountant used acceptable accounting practices, and she was unable to authenticate the data obtained from the prior accountant as accurate. She could not testify that the condo’s lien was valid and the husband’s claim of having pre-paid the assessments prior to the takeover was untrue.
In short, the Association failed to lay the proper foundation for admitting the ledgers into evidence. And, without the ledgers, the Association failed to prove that the husband and wife owed $29,282.89 and $42,909.45, respectively. We therefore reverse the trial court’s final judgments of foreclosure and remand for entry of a directed verdict in favor of the condo owners.

Reversed and Remanded.

GROSS and CONNER, JJ„ concur.

. The trial court gave the condo owners only twenty minutes to present their case despite their having flown in from New York for the hearing.