OPINION ON MOTION FOR REHEARING, CLARIFICATION, CERTIFICATION AND REHEARING EN BANC
MARSTILLER, J.
We deny the motion for rehearing, clarification, certification and rehearing en banc filed by Appellee, Aurora Loan Services, LLC, but we withdraw our opinion of March 4, 2014, and substitute this opinion in its place.
Lewis B. Hunter, Jr., appeals a final judgment of foreclosure entered against him, asserting that Aurora Loan Services, LLC (“Aurora”), lacked standing to sue for foreclosure. He argues the trial court relied on evidence incorrectly admitted under the business records exception to the hearsay rule to find that Aurora held the promissory note as of April 3, 2007, when the lawsuit commenced. We agree, and reverse.
Aurora alleged in its “Complaint to Foreclose Mortgage and to Enforce Lost Loan Documents” that it owned and held the promissory note and the mortgage, but was not in physical possession of the original documents and could not obtain their whereabouts. Evidence presented at trial in August 2012 established that the original owner of the note and mortgage was MortgagelT, and that MortgagelT subsequently assigned both to Aurora. A letter dated January 27, 2007, from Aurora to Mr. Hunter entitled, “Notice of Assignment, Sale, or Transfer of Servicing Rights,” directed him to remit mortgage payments to Aurora beginning February 1, 2007. The “Corporate Assignment of Mortgage” executed on June 11, 2007, and recorded on January 8, 2008, showed MortgagelT as the assignor and Aurora as the assignee.
To establish that it held and had the right to enforce the note as of April 3, 2007, Aurora sought to put in evidence certain computer-generated records: one, a printout entitled “Account Balance Report” dated “1/30/2007,” indicating Mr. Hunter’s loan was sold to Lehman Brothers — of which Aurora is a subsidiary and for which Aurora services loans — and payment in full was received on “12/20/2006;” the second, a “consolidated notes log” printout dated “7/18/2007” indicating the physical note and mortgage were sent — it is not readily clear to whom — via two-day UPS on April 18, 2007. Neither document reflects that it was generated by Mortga-gelT.
At the time of trial in 2012, these records were possessed by Rushmore Loan *572 Management Service (“Rushmore”), the latest in a succession of loan servicers. (Rushmore services the loan on behalf of Arch Bay Holdings, which currently owns the note and mortgage.) Asserting the records originally came from MortgagelT, Aurora relied on the testimony of Rushmore employee Roger Martin to lay the necessary foundation for admitting the records into evidence under section 90.803(6)(a), Florida Statutes, the business records exception to the hearsay rule.
Mr. Martin testified that he has worked in the residential mortgage industry for approximately 15 years, performing a variety of duties, including due diligence and underwriting. From 2004 to about 2007, he performed these services for Lehman Brothers. He had not worked at any time for MortgagelT. But he testified, based on his dealings with the company while at Lehman Brothers, that MortgagelT’s business practice, upon the sale of a loan and mortgage, was to send electronic versions of the pertinent documents to the new owner, determine . a post-sale “transfer date” on which loan servicing would transfer from its servicer to the new owner’s servicer, and retain possession of the original note and mortgage documents until the transaction was fully completed. According to Mr. Martin, this procedure is standard across the mortgage industry.
As to the consolidated notes log, one entry therein dated “4/18/07” reads: “LENSTAR SERVICER: SENT ORIGINAL NOTE AND MORTGAGE VIA 2 DAY UPS # 1ZR90AF80242840896.” A second entry dated “4/18/07” simply says, “AURORA LOAN SERVICES, LLC.” Mr. Martin, however, deciphered the notations to mean MortgagelT sent the original documents to Aurora on April 18, 2007. He had no knowledge about who generated the notations, or how and where that individual obtained the information. Neither did he have such knowledge about the Account Balance Report. Further, he could not testify from personal knowledge that either document belonged to or was generated by MortgagelT. He testified only that the computer program from which the notes log originated is used across the industry, that a records custodian for the loan servicer is the person who usually inputs such notes, and that normal industry practice is for a lender’s accounts payable department to create an account balance report reflecting a zero balance on the loan when it is sold to another entity.

Discussion

A trial court’s decision to admit evidence is reviewed for abuse of discretion, subject, of course, to the rules of evidence and case law. See generally Gregory v. State, 118 So.3d 770, 780 (Fla. 2013). Under the Florida Evidence Code, hearsay — a statement, other than one made by a witness at trial, offered to prove the truth of the matter asserted — is inadmissible, except as specifically provided in the code. See §§ 90.801(1)(c), 90.802, 90.803, 90.804, Fla. Stat. (2012). Section 90.803(6) provides one such exception for business records, if the necessary foundation is established:
A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or as shown by a certification or declaration that complies with paragraph (c) and s. 90.902(11), unless the sources of *573 information or other circumstances show lack of trustworthiness.
§ 90.803(6)(a), Fla. Stat. (2012). The party seeking admission, of hearsay under the business records exception must establish all of the following: (1) the record was made at or near the time of the event; (2) the record was made by or from information transmitted by a person -with knowledge; (8) the record was kept in the ordinary course of a regularly conducted business activity; and (4) it was a regular practice of that business to make such a record. See Yisrael v. State, 993 So.2d 952, 956 (Fla.2008); King v. Auto Supply of Jupiter, Inc., 917 So.2d 1015, 1018 (Fla. 1st DCA 2006). “While it is not necessary to call the individual who prepared the document, the witness through whom a document is being offered must be able to show each of the requirements for establishing a proper foundation.” Mazine v. M & I Bank, 67 So.3d 1129, 1132 (Fla. 1st DCA 2011).
Here, Mr. Martin’s testimony failed to establish the necessary foundation for admitting the Account Balance Report and the consolidated notes log into evidence under the business records exception. Mr. Martin was neither a current nor former employee of MortgagelT, and otherwise lacked particular knowledge of Mortgagees record-keeping procedures. Absent such personal knowledge, he was unable to substantiate when the records were made, whether the information they contain derived from a person with knowledge, whether MortgagelT regularly made such records, or, indeed, whether the records belonged to MortgagelT in the first place. His testimony about standard mortgage industry practice only arguably established that such records are generated and kept in the ordinary course of mortgage loan servicing. Cf. Weisenberg v. Deutsche Bank Nat’l Trust Co., 89 So.3d 1111,1112-13 (Fla. 4th DCA 2012) (finding business records exception satisfied where bank’s witness was a supervisor at bank’s servicing agent who had personal knowledge of bank’s internal process for applying loan payments and calculating balances, was familiar "with bank’s record-keeping system, and knew how payment data was uploaded from bank’s computer system to servicing agent’s system); Glarum v. LaSalle Bank Nat’l Ass’n, 83 So.3d 780, 782-83 (Fla. 4th DCA 2011) (holding affidavit of loan servicer’s employee offered to prove amount debtor owed was inadmissible as business record where employee did not know who entered the data he relied on, whether the computer entries were accurate when made, or how incorporated data from prior loan servicer was derived); WAMCO XXVIII, Ltd. v. Integrated Electronic Environments, Inc., 903 So.2d 230, 233 (Fla. 2d DCA 2005) (finding business records exception satisfied where loan servicer’s records incorporated payment data from previous servicer, and officer of current servicer testified he had worked on the loans at issue and verified the payment data, and described his company’s verification process).
“A crucial element in any mortgage foreclosure proceeding is that the party seeking foreclosure must demonstrate that it has standing to foreclose.” McLean v. JP Morgan Chase Bank Nat’l Ass’n, 79 So.3d 170, 173 (Fla. 4th DCA 2012). To establish standing, the plaintiff must show it held or owned the note at the time the complaint was filed. Id. “A plaintiff may prove that it has standing to foreclose ‘through evidence of a valid assignment, proof of purchase of the debt, or evidence of an effective transfer.’ ” Stone v. BankUnited, 115 So.3d 411, 413 (Fla. 2d DCA 2013) (quoting BAC Funding Consortium Inc. ISAOA/ATIMA v. Jean-Jacques, 28 So.3d 936, 939 (Fla. 2d DCA *574 2010)). The Account Balance Report and consolidated notes log Aurora relied on were incorrectly admitted into evidence as business records, and therefore, could not serve to establish Aurora’s standing to sue Mr. Hunter in foreclosure. No other evidence in the record before us independently proves that Aurora possessed the promissory note originally owned by Mort-gagelT via valid assignment, purchase of debt, or effective transfer, as of April 3, 2007. Because Aurora lacked standing to foreclose, the final judgment of foreclosure entered against Mr. Hunter is REVERSED. We remand for further proceedings, as necessary, on Mr. Hunter’s counterclaim.
THOMAS and MAKAR, JJ., concur.