IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

LLOYD STEVE
BURDESHAW and TERESA
BURDESHAW,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

      Appellants,

CASE NO. 1D13-2703

v.

THE BANK OF NEW YORK
MELLON (FKA The Bank of
New York), AS TRUSTEE FOR
MASTR ALTERNATIVE LOAN
TRUST 2006-2, MORTGAGE
PASS-THROUGH
CERTIFICATES, SERIES 2006-
2,

      Appellee.

_____/

Opinion filed October 13, 2014.

An appeal from the circuit court of Bay County.
Thomas Roland Ellinor, Judge.

Jeffrey P. Whitton, Panama City, for Appellant.

Tricia Julie Duthiers, Juan A. Gonzalez and Frank P. Cuneo of Liebler, Gonzalez
& Portuondo, Miami, for Appellee.

CLARK, J.

The Burdeshaws appeal the final judgment of foreclosure in favor of The Bank of New York Mellon ("BNYM"), contending that the evidence to support the amount of indebtedness was inadmissible hearsay and thus, no admissible evidence supported the trial court's determination of the amount due. In addition to reversal of the final judgment, the Burdeshaws seek remand of this case with instructions to dismiss, based on a meritorious motion pursuant to rule 1.420(e), Florida Rules of Civil Procedure, taken under advisement by the trial judge and denied de facto when the court eventually conducted a bench trial and issued a final judgment. We agree on both points, reverse the final judgment of foreclosure, and remand for dismissal of the action.

Appellants executed a note payable to Bay Bank & Trust Co. for $600,000.00 on October 31, 2005. The note was secured by a mortgage which was also signed by Appellants on October 31, 2005. Bay Bank & Trust assigned the mortgage to Mortgage Electronic Registration Systems ("MERS") on November 10, 2005.

On March 19, 2009, Suntrust Mortgage, Inc. filed a complaint for foreclosure on the mortgage and alleged that Suntrust "owns and holds said note and mortgage." Suntrust attached to its complaint a copy of the note, with a special endorsement on the last page of the note signed but not dated by an official

of Bay Bank & Trust. See § 673.2051(1), Fla. Stat., (because Suntrust is specifically identified as entity to whom note was payable, indorsement is "special indorsement"). The words "without recourse, pay to the order of Suntrust Mortgage, Inc." appeared above the signature of the Bay Bank & Trust officer.

The Burdeshaws filed their notice of inactivity, pursuant to rule 1.420(e), on July 20, 2010. After sixty more days with no record activity, on September 20, 2010, the Burdeshaws filed their motion to dismiss. Other than this notice and motion, no paper was filed in the court file by either party or the court between September 16, 2009 and October 4, 2010.

Suntrust did not file a response to the motion to dismiss for lack of prosecution but did file other papers in the record on October 4, 2010, and thereafter. A motion hearing was held on November 8, 2010, and one of the motions considered by the court was the Burdeshaws' motion to dismiss under rule 1.420(e). The record does not contain a transcript of this hearing and Suntrust did not file a written assertion of good cause why the action should have remained pending. In the order entered November 29, 2010, the court stated that it was taking the rule 1.420 motion to dismiss "under advisement."

BNYM was substituted as party plaintiff on January 25, 2013, and a bench trial took place on May 13, 2013. In support of its documentary evidence, BNYM presented the testimony of Nancy Johnson, twenty-two year Suntrust employee

3

currently in the position of "default proceedings officer." She testified that Suntrust was servicing the loan and that she had reviewed Suntrust's records in preparation for the trial. Counsel for BNYM inquired about the documents it sought to admit into evidence, including the letter notifying the Burdeshaws of the default, the note and mortgage, and a "computer printout from Fidelity system" purporting to show the transactions on the account and the balance owed. Counsel for the Burdeshaws objected to Ms. Johnson's testimony regarding each document in turn, stating that there was no predicate for Johnson's testimony, that BNYM had not established any of the elements to qualify her as the custodian of the records, and that BNYM had not otherwise qualified Ms. Johnson to authenticate the computer-generated records. The trial court overruled each objection until eventually, counsel requested "a standing objection, so I don't keep making it," which was granted.

During Ms. Johnson's testimony to authenticate Plaintiff's Composite Exhibit 3, admitted into evidence to prove BNYM's claim for a payoff balance of $822,677.79, she stated that the exhibit was "a printout from the Fidelity system that we use" and that Suntrust had prepared and provided the printout to counsel for BNYM. Over the defense's objection, Ms. Johnson read aloud the principle balance, the past due interest amount, and other fees and charges indicated on the exhibit. On cross examination, Ms. Johnson explained that her knowledge of the amounts owed came from her review of the printout and that the printout was "on

4

our system." When asked by whom or how fees and expenses were posted to the account, Johnson testified that "everyone" was using the Fidelity system and "they would input any transactions, any adjustments." Ms. Johnson stated that she had reviewed the numbers on the printout the Thursday of the week prior to trial and that the initial principle balance of the loan "would have been input by someone handling the origination of the loan." She did not know where any information on payments made prior to Suntrust's first entries for the file might come from. On re-direct, Ms. Johnson clarified that her job duties were to review mortgages, notes, payment histories, and breach letters to prepare for foreclosure hearings, and to testify at trials about records kept by Suntrust. Accordingly, she considered herself a records custodian for Suntrust.

At the close of evidence, counsel for the Burdeshaws renewed the motion to dismiss under rule 1.420(e), which had not yet been ruled on after the court took it under advisement in 2010. Counsel argued that when no record activity took place for the requisite time periods, dismissal was mandatory and that he never abandoned that motion. Counsel also argued that BNYM had not proved their standing or the amount due under the note through documents authenticated by a records custodian, and that Ms. Johnson's testimony was "multiple hearsay" because the documents were based on "what Bay Bank transferred over as the account." BNYM's counsel responded that any hearsay objection had been

5

waived "because he did not raise it at the time of the presentation of the testimony." The court found for BNYM and entered the final judgment of foreclosure with an amount due of $822,677.79.

Contrary to BNYM's position in this appeal, the issue of the sufficiency of the evidence to support the final judgment was adequately preserved for review. Appellants challenge the sufficiency of the evidence because the only evidence to support the final judgment was erroneously admitted hearsay not qualified for the business records exception set out in section 90.803(6)(a), Florida Statutes. During the bench trial, defense counsel continually objected to the hearsay evidence and eventually requested and was granted a standing objection. While section 90.104, Florida Statutes, requires "a specific ground of objection if the specific ground was not apparent from the context" to challenge the admission of evidence, the specific ground was apparent from the context of counsel's repeated objections in this trial. Section 90.104 does not require "magic words" to preserve a hearsay objection, so long as the trial court is informed of the perceived error. See Corona v. State, 64 So. 3d 1232, 1242 (Fla. 2011).

It is true that defense counsel did not use the words "hearsay" or "section 90.803(6), Florida Statutes" in his objections. However, he did challenge BNYM's failure to establish "the steps to make her a records custodian," the "complete lack of predicate to establish her bona fides at least to authenticate the document," and

6

he offered "to provide the court with some law on what a records custodian has to establish." The context of the objections to the witness' testimony about the records in this case made it clear to the court and to opposing counsel that the objection was directed towards the admission of computer-generated hearsay documents due to the plaintiff's failure to establish any of the grounds required for the business records exception to the hearsay rule under section 90.803(6).

Furthermore, because Ms. Johnson was the only witness to authenticate the only documentary evidence to support the amount owed at a bench trial, rule 1.530(e), Florida Rules of Civil Procedure, allows Appellants to challenge the sufficiency of the evidence on appeal even without the repeated objections made by counsel. Although a failure to object is not a prudent or advisable practice, Appellants' challenge to the sufficiency of the evidence to support the judgment is cognizable on appeal pursuant to rule 1.530(e) regardless of the specificity of defense counsel's numerous objections during the bench trial. The rule provides:

> When an action has been tried by the court without a jury, the sufficiency of the evidence to support the judgment may be raised on appeal whether or not the party raising the question has made any objection thereto in the trial court or made a motion for rehearing, for new trial, or to alter or amend the judgment.

See also Wolkoff v. Am. Home Mtg. Servicing, Inc., 39 Fla. L. Weekly D1159, 2014 WL 2378662, at *1 (Fla. 2d DCA May 30, 2014) ("The Wolkoffs were not required to make a contemporaneous objection to the sufficiency of the evidence in

order to preserve the issue for appeal."). Accordingly, Appellants' challenge to the sufficiency of the evidence to support the final judgment of foreclosure, due to the failure of BNYM to establish the business records exception to the hearsay rule for the documents upon which the judgment is based, is properly before this Court.

The sole support for the trial court's ruling on the amount owed on the debt was Plaintiff's Composite Exhibit 3, a printout purportedly showing the fees, expenses, and principal balance due on the note and mortgage. BNYM's only witness to authenticate this document as a business record admissible under section 90.803(6), Florida Statutes, was Ms. Johnson. Counsel never asked the witness, and she never testified, whether composite exhibit 3 or the entries it contained were: (1) made at or near the time of the event; (2) made by or from information transmitted by a person with knowledge; (3) kept in the ordinary course of a regularly conducted business activity; and (4) made as a regular practice of that business. See Yisrael v. State, 993 So. 2d 952, 956 (Fla. 2008).

"[L]oan payment history printouts, if properly authenticated, are routinely admitted as a business record in foreclosure cases." Cayea v. CitiMortgage, Inc., 138 So. 3d 1214, 1217 (Fla. 4th DCA 2014). Proper authentication by a witness requires that the witness demonstrate familiarity with the record-keeping system of business that prepared the document and knowledge of how the data was uploaded into the system. Weisenberg v. Deutsche Bank Nat'l Trust Co., 89 So. 3d 1111

(Fla. 4th DCA 2012); see also Cayea at 1217. For instance, in Weisenberg, the affiant was "a supervisor at the bank's servicing agent." Her affidavit about the cashiering department's responsibility for collecting and applying payments and about the "program known as the mortgage servicing platform" demonstrated that she had sufficient knowledge and familiarity with the bank's record-keeping system and how the data was uploaded into the system to qualify her affidavit as an admissible business record to support the final judgment of foreclosure.

Similarly, in Lindsey v. Cadence Bank, N.A., 135 So. 3d 1164 (Fla. 1st DCA 2014), the affidavit of the bank's assistant vice-president was sufficient to qualify the attached computer printouts to support the amount due on the loan as admissible business records. The vice-president's affidavit indicated her familiarity with the bank's computerized loan processing system and specifically her knowledge of how the system worked. She described how the system automatically maintained loan balances based on payments entered into the system by the bank's loan processing employees, that the payments were entered into the system at the time of payment, and that the loan records were updated within twenty-four hours to reflect each transaction. Lindsey, 135 So. 3d at 1168. Summary judgment for the bank was thus affirmed.

Likewise, in Cayea v. CitiMortgage, Inc., the final judgment of foreclosure after a bench trial was affirmed where the proof of the amount owed was based on

9

bank records deemed admissible business records by the trial court. The bank's witness was "an employee" of CitiMortgage's "default research and litigation department." Cayea, 138 So. 3d at 1215. The witness testified that the bank's regular business practice was to enter payments into its Citilink system upon receipt and that employees of the payment processing department actually entered the data. He also described the two sections of the payment processing department and the duties of each. Finally, the witness testified that the entries were kept in the ordinary course of business and that individual records were ordinarily kept for each loan by CitiMortgage. The court found the witness "well enough acquainted with the activity to provide testimony" and equated this witness' knowledge with that of the witness in Weisenberg, as distinguished from the witness' lack of knowledge in Glarum v. LaSalle Bank N.A., 83 So. 3d 780, 783 (Fla. 4th DCA 2011). Cayea, at 1218.

On the other hand, if not properly authenticated, loan payment history printouts and other evidence of the amount due on a loan are inadmissible hearsay. For example, in Glarum, the court reversed summary judgment for the bank because the bank's sole witness testified from a bank printout without first establishing the hearsay exception for business records. There, the witness/affiant was a "specialist" for the loan servicer and his affidavit stated that he obtained the amount of indebtedness from "his company's computer system." Id. at 782.

10

However, the specialist "did not know who, how, or when the data entries were made into [the servicer's] computer system" and "could not state if the records were made in the regular course of business." Id. The specialist had even less knowledge about the business practices of the prior loan servicer, the apparent source of the data upon which his own company relied to open the file. Accordingly, both the witness' testimony and the affidavit containing the data for the amount owing were inadmissible hearsay, unqualified for the business records exception under section 90.803(6)(a). Because there was no other competent evidence to prove the amount due and owing, summary judgment was reversed.

This Court reversed the final judgment of foreclosure in Mazine v. M & I Bank, 67 So. 3d 1129 (Fla. 1st DCA 2011), due to the erroneous admission of an affidavit of the amounts due and owning. The bank's witness at the bench trial was "the regional security officer" for the bank, who "candidly admitted that he had no knowledge as to the preparation or maintenance of the documents offered by the bank," "did not know if the source of the information contained" in the record was correct, and "did not know if the amounts reported in the affidavit were accurate." Mazine, 67 So. 3d at 1132. Because the affidavit was the only evidence supporting the amount of defendants' default, admission of the document was harmful error requiring reversal of the judgment of foreclosure.

The final judgments of lien foreclosure were reversed in Yang v. Sebastian

11

Lakes Condo. Ass'n Inc., 123 So. 3d 617 (Fla. 4th DCA 2013), because the current management company's witness had no knowledge of the starting balance of the loan, never worked with the original accountant, and had no knowledge of how the original figures were entered into the ledgers. Over objection to the hearsay account ledgers as not properly authenticated via the business records exception, the trial court admitted the ledgers. These documents were the only support for the amounts owed. Finding that the foundation for admitting the ledgers into evidence was lacking, the appellate court reversed the final judgment of foreclosure.

Most recently, in Wolkoff, the appellate court reversed the final judgment of foreclosure for the mortgagee, entered after a bench trial, because the amount of indebtedness was not sufficiently proved. At the bench trial, the mortgagee offered the testimony of Mr. Vent, "a default case resolution representative for the mortgagee, who authenticated the promissory note, mortgage, and payment history." Wolkoff, 2014 WL 2378662, at *1. However, "when Vent testified about the amount of debt owed by the Wolkoffs he merely confirmed that the totals given to him on a proposed final judgment 'seemed accurate'; he never openly recited the total amount of indebtedness, nor did counsel for [the mortgagee] ask him to. It did not submit the proposed final judgment or any business records relevant to the Wolkoffs' mortgage payment history as evidence." Id.

While this appeal is not based on a challenge to BNYM's standing to

foreclose, the business records exception to the hearsay rule as set out in section 90.803(6)(a) was applied to proof of standing in <u>Hunter v. Aurora Loan Services, LLC</u>, 137 So. 3d 570 (Fla. 1st DCA 2014). There, Aurora offered into evidence "certain computer-generated records" pertaining to transfers of the note and mortgage. <u>Hunter</u>, 137 So. 3d at 571. The printouts contained no indication that they were prepared by the original lender, MortgageIT, and Aurora attempted to authenticate the documents through the testimony of Mr. Martin, an employee of the servicer of the loan at the time of trial. The court stated:

> At the time of trial in 2012, these records were possessed by Rushmore Loan Management Service ("Rushmore"), the latest in a succession of loan servicers. ... Asserting the records originally came from MortgageIT, Aurora relied on the testimony of Rushmore employee Roger Martin to lay the necessary foundation for admitting the records into evidence under section 90.803(6)(a), Florida Statutes, the business records exception to the hearsay rule.
>
> Mr. Martin testified that he has worked in the residential mortgage industry for approximately 15 years, performing a variety of duties, including due diligence and underwriting. ... He had not worked at any time for MortgageIT. But he testified, based on his dealings with the company while at Lehman Brothers, that MortgageIT's business practice, upon the sale of a loan and mortgage, was to send electronic versions of the pertinent documents to the new owner, determine a post-sale "transfer date" on which loan servicing would transfer from its servicer to the new owner's servicer, and retain possession of the original note and mortgage documents until the transaction was fully completed. According to Mr. Martin, this procedure is standard across the mortgage industry.

<u>Id.</u> at 571-72.

Regarding notations on the computer printouts, Mr. Martin "had no

knowledge about who generated the notations, or how and where that individual obtained the information. Neither did he have such knowledge about the Account Balance Report." Id. at 572. He could not testify from personal knowledge that either document belonged to or was generated by the original lender but he did testify that the computer program from which the notes log originated was "used across the industry, that a records custodian for the loan servicer is the person who usually inputs such notes, and that normal industry practice is for a lender's accounts payable department to create an account balance report reflecting a zero balance on the loan when it is sold to another entity." Id.

This Court found that Mr. Martin's testimony was insufficient to "establish the necessary foundation for admitting the Account Balance Report" and the other documents under the business records exception. Hunter at 573. The witness was never employed by the original lender and lacked "particular knowledge of MortgageIT's record-keeping procedures." Id. "Absent such personal knowledge, he was unable to substantiate when the records were made, whether the information they contain derived from a person with knowledge, whether MortgageIT regularly made such records, or, indeed, whether the records belonged to MortgageIT in the first place. His testimony about standard mortgage industry practice only arguably established that such records are generated and kept in the ordinary course of mortgage loan servicing." Id.

In this case, BNYM failed to establish any foundation qualifying the printout Ms. Johnson read as a business record and failed to establish any foundation qualifying Ms. Johnson as a records custodian or person with knowledge of the four elements required for the business records exception. See Yisrael, 993 So. 2d at 956. Accordingly, the admission of Ms. Johnson's testimony about the loan balance and the admission of the computer printouts she was called to authenticate, over the objections of opposing counsel, constituted reversible error. Johnson's only knowledge about the amount due and owing came from her review of the computer printouts and she had no information about how and when those records had been prepared or where the data came from. Her testimony that "everyone" was using the Fidelity system and "they would input any transactions, any adjustments" is comparable to the witness' testimony in Hunter about general mortgage industry practices. Ms. Johnson's assumption that the original loan amounts "would have been input by someone handling the origination of the loan" was merely supposition, based on her general knowledge of ordinary mortgage industry practices, not any specific knowledge about this debt or the transaction of the information between the original lender and subsequent servicers, including Suntrust. She was thus unable to show any of the requirements for establishing a proper foundation for the amounts or the documents she relied on.

Under these circumstances and considering the testimony elicited from the witness in this case, the admission of BNYM's composite exhibit 3 was reversible error and no other evidence was presented to support the amount owed on the note. Because there is no evidence to support the amounts contained in the final judgment, reversal is required.

Finally, although it might be appropriate to remand for further proceedings under other circumstances, this case does not present a reason to afford BNYM additional time and another opportunity to prove its case. As the Second District has held "[a]ppellate courts do not generally provide parties with an opportunity to retry their case upon a failure of proof." Wolkoff, 2014 WL 2378662, at *3. The complaint initiating this action was filed in 2009. The defendants' motion to dismiss for lack of prosecution, filed in 2010, was supported by the absence in the record of any activity in the file for the time periods set out in rule 1.420(e), and by the absence of an assertion by the plaintiff of good cause, or any cause, prior to the hearing on the motion, for the action to remain pending. As noted in Wilson v. Salamon, 923 So. 2d 363, 368 (Fla. 2005), and Metro. Dade Cnty. v. Hall, 784 So. 2d 1087 (Fla. 2001), the mandatory language of the rule—"the action shall be dismissed"—leaves the trial court with no discretion in the matter. "There is either activity on the face of the record or there is not." Metro. Dade Cnty v. Hall, 784 So. 2d at 1090.

Accordingly, the final judgment of foreclosure is reversed and this cause is remanded for entry of an order of dismissal of the case.

VAN NORTWICK and ROBERTS, JJ., CONCUR.