DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**KRISTY S. HOLT,**
Appellant,

v.

**CALCHAS, LLC,**
Appellee.

No. 4D13-2101

[November 5, 2014]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Joel T. Lazarus, Judge; L.T. Case No. 08-19406 CA.

Philippe Symonovicz of Law Offices of Philippe Symonovicz, Fort Lauderdale, for appellant.

Pascale Achille and Brian S. Vidas of Panza, Maurer & Maynard, P.A., Fort Lauderdale, for appellee.

CONNER, J.

Kristy S. Holt appeals the trial court's order granting final judgment in favor of Calchas, LLC ("the bank"). Holt argues that the trial court erred by: (1) admitting into evidence a copy of the promissory note, mortgage, and assignment of mortgage; (2) denying her motion to dismiss for the bank's failure to prove compliance with paragraph twenty-two of the mortgage; and (3) admitting into evidence the payment history over her hearsay objection. We find no merit in the first argument and affirm without discussion, but agree with the second and third arguments and reverse and remand for further proceedings.

*The Pertinent Trial Proceedings*

Wells Fargo Bank, N.A., the original plaintiff, filed a mortgage foreclosure complaint. Holt filed various amended affirmative defenses, including the bank's failure to give the contractually required notice of default, opportunity to cure, and acceleration of the amount due. During the litigation, there were two substitutions of party plaintiffs. The first

substituted Consumer Solutions 3, LLC for Wells Fargo, and the second substituted the bank for Consumer Solutions. Eventually, a trial was conducted.

The trial proceeding was unusual. The transcript of the trial for the record on appeal begins in the middle of the bank's direct examination of Holt. Apparently, the trial judge who began the trial recused herself shortly after the trial began. On the same day, after a recess, a second judge took over the trial and testimony resumed from where the trial stopped when the first judge recused herself. Additionally, the attorney for Holt, who represented her while the first judge was presiding, also left the trial, and a new attorney began representing her. The transcript for the portion of the trial conducted by the first judge was not provided on appeal.[1]

During the portion of the trial before the second judge, the bank's asset manager testified, and the bank sought to enter Holt's payment history into evidence under the business records exception to the hearsay rule. Holt objected to the admission of the payment history and proceeded to voir dire the asset manager regarding his personal knowledge of the document.

The asset manager admitted that he worked for the bank, but was testifying regarding how Consumer Solutions handled the loan before the bank acquired it. He testified that he never worked for Consumer Solutions and did not know who transmitted the records he was testifying about and had never seen Consumer Solution's policy manual. He further testified: "And doing -- I believe that they -- the way I've done business in the past I believe they do things correctly." He testified substantially the same with regard to his knowledge about how Wells Fargo previously handled the loan and admitted he never worked for Wells Fargo. At the end of the voir dire, Holt objected to the admissibility of the payment history on the basis of hearsay.[2] Holt's objection was overruled.

---

[1] The bank argues on appeal that the original note and mortgage were admitted into evidence by stipulation during the part of the trial presided over by the first judge. Because a transcript of that portion of the trial was not made a part of the appellate record, and because we reverse on other grounds, we affirm on the issue of improper admission of a copy of the note and mortgage during the second portion of the trial without further discussion.

[2] On appeal, Holt also contends the trial court erred in overruling her hearsay objection to admitting into evidence a copy of the assignment of mortgage. The record is unclear and it is unknown if the trial court also admitted the mortgage assignment into evidence based on the business records exception. The mortgage

After the bank rested its case, Holt moved to dismiss the action on the basis that the bank did not provide any evidence that it complied with paragraph twenty-two of the mortgage. Paragraph twenty-two required that

> the [l]ender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by Judicial proceeding and sale of the Property.[3]

The bank responded that there were at least two affidavits in the court file stating that it complied with paragraph twenty-two. However, the record shows that the affidavits were not admitted as evidence at the time the bank rested its case-in-chief. Holt objected to the affidavits being considered, and argued that, even if the trial court took judicial notice of the court file containing the affidavits stating that paragraph twenty-two was complied with, the court could not take judicial notice of the fact that the notice was mailed. The trial court implicitly overruled the objection and denied the motion to dismiss by granting the judgment. Holt argues that the trial court judge erred in admitting the payment history over her objection and in denying her motion to dismiss. We agree.

---

assignment was nonetheless admissible as a verbal act (discussed below), so we affirm as to that issue without further discussion.

[3] Notice of the right to cure now is a standard clause in residential mortgages required by section 494.00794(2), Florida Statutes (2014), which states:

> Before any action filed to foreclose upon the home or other action is taken to seize or transfer ownership of the home, a notice of the right to cure the default must be delivered to the borrower at the address of the property upon which any security exists for the home loan by postage prepaid certified United States mail, return receipt requested, which notice is effective upon deposit in the United States mail.

§ 494.00794(2), Fla. Stat. (2014).

*Legal Analysis*

The standard of review for evidentiary rulings is abuse of discretion. *Salazar v. State*, 991 So. 2d 364, 373 (Fla. 2008).  The standard of review for denial of a motion for involuntary dismissal at trial is de novo.  *See Sheehan v. Allred*, 146 So. 2d 760, 764 (Fla. 1st DCA 1962) ("By whatever name it is called, [a motion for a directed verdict] is essentially a procedural device by which an issue made by the pleadings is withdrawn from the jury's consideration when the evidence establishes without conflict that the moving party is entitled to judgment on the issue *as a matter of law.*") (emphasis added); *see also Charlotte Asphalt, Inc. v. Cape Cave Corp.*, 406 So. 2d 1234, 1236 (Fla. 2d DCA 1981) (citing *Harnett v. Fowler*, 94 So. 2d 724 (Fla. 1957)) (explaining that motions for directed verdict in jury cases or involuntary dismissal in nonjury cases are governed by the same principles).

*Payment History Hearsay Objection*

Holt argues that the asset manager was not able to provide the proper foundation to establish that the payment history was admissible under the business records exception to the hearsay rule.

Section 90.803(6)(a), Florida Statutes (2013) provides:

> (a)  A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or as shown by a certification or declaration that complies with paragraph (c) and s. 90.902(11), unless the sources of information or other circumstances show lack of trustworthiness.

§ 90.803(6)(a), Fla. Stat. (2013).  The elements to prove that evidence is admissible under the business records exception are:

> (1) the record was made at or near the time of the event; (2) was made by or from information transmitted by a person with knowledge; (3) was kept in the ordinary course of a regularly

4

conducted business activity; and (4) that it was a regular practice of that business to make such a record.

*Yisrael v. State*, 993 So. 2d 952, 956 (Fla. 2008).

Holt cites to *Glarum v. LaSalle Bank National Ass'n*, 83 So. 3d 780 (Fla. 4th DCA 2011), to support her argument that the witness was not able to lay the proper foundation for the business records exception. In *Glarum*, we reversed a trial court's order granting summary judgment in favor of a bank where the evidence of the amount of money owed by the borrowers was deemed inadmissible under the business records exception. *Id.* at 783. There, the witness who testified regarding the amount owed by the borrowers stated that he "did not know who, how, or when the data entries were made into [the previous mortgage holder]'s system. He could not state if the records were made in the regular course of business." *Id.* at 782. Since the witness could not provide the necessary information to lay the foundation for the business records exception, we determined the document constituted inadmissible hearsay. *Id.* at 783.

Subsequently, we distinguished the facts of *Glarum* in *Weisenberg v. Deutsche Bank National Trust Co.*, 89 So. 3d 1111 (Fla. 4th DCA 2012). In *Weisenberg*, we held that, "[u]nlike in *Glarum*, the deposition excerpts show that [the affiant] knew how the data was produced" and "[h]er testimony demonstrated that she was familiar with the bank's record-keeping system and had knowledge of how the data was uploaded into the system." *Weisenberg*, 89 So. 3d at 1112.

Additionally, the Second District reversed a trial court's ruling that evidence was inadmissible under the business records exception in *WAMCO XXVIII, Ltd. v. Integrated Electronic Environments, Inc.*, 903 So. 2d 230, 233 (Fla. 2d DCA 2005). There, the Second District held that a document which contained the amount of money owed on a loan was admissible under the business records exception even where the testimony as to the amount owed was based on information from a bank that previously held the loan. *Id.* at 232-33. The plaintiff's witness testified that it was part of his duties to oversee the collection of the loans that the bank purchased, and that the initial numbers he used in his calculations were provided by the previous bank. *Id.* at 233. However, the witness also testified "that while he did not know the specific person at [the previous bank] who would have put information into the [previous bank's] system, he knew how the bank loan accounting systems worked and that the procedures were 'bank-acceptable accounting systems.'" *Id.* Additionally, the witness testified that, although the original numbers WAMCO used for calculations came from the previous bank, WAMCO had a process "use[d]

to *verify the accuracy of the information* received in connection with the loan purchases." *Id.* (emphasis added). The witness explained that, when WAMCO first received a loan, the information goes into its system and employees go over the files to see if anything "seem[ed] out of line." *Id.*

Although the instant case has some similarity to *WAMCO* in that a witness associated with a subsequent note holder testified about loan information kept by a previous note holder and loan data systems, the difference in *WAMCO* is that there the witness testified that the current note holder had procedures in place to check the accuracy of the information that it received from the previous note holder. The witness in the instant case did not testify that the bank had these types of mechanisms in place for checking the accuracy of the numbers from Wells Fargo or Consumer Solutions. With this type of testimony missing, it is unknown whether the asset manager had personal knowledge as to the accuracy of the numbers, unlike the testimony in *WAMCO*.

This case is more similar to the First District's decision in *Hunter v. Aurora Loan Services, LLC*, 137 So. 3d 570 (Fla. 1st DCA 2014). In *Hunter*, a note and mortgage was assigned by one bank, as the initial note holder, to another bank. *Id.* At trial, a witness who worked for the current note holder, but who never worked for the initial note holder, attempted to lay the foundation for the introduction of records pertaining to prior ownership and transfer of the note and mortgage as business records. *Id.* The witness testified that based on his dealings with the original note holder, the original note holder's business practice regarding the transfer of ownership of loans was standard across the mortgage industry. *Id.* at 572. He could not testify, based on personal knowledge, who generated the information in the documents or where the person received the information. *Id.* He also testified, in a general fashion and without any specifics, that some of the documents sought to be introduced were generated by a computer program used across the industry and that a records custodian for the loan servicer was the person who usually inputs the information contained in the documents. *Id.* The trial court admitted the documents into evidence. *Id.*

The court in *Hunter* observed that "[w]hile it is not necessary to call the individual who prepared the document, the witness through whom a document is being offered must be able to show each of the requirements for establishing a proper foundation." *Id.* at 573 (quoting *Mazine v. M & I Bank*, 67 So. 3d 1129, 1132 (Fla. 1st DCA 2011)). The First District held that the witness' "testimony failed to establish the necessary foundation for admitting [the documents]. . . into evidence under the business records exception." *Id.* The First District also held that:

> Absent such personal knowledge, [the witness] was unable to substantiate when the records were made, whether the information they contain derived from a person with knowledge, whether [the original note holder] regularly made such records, or, indeed, whether the records belonged to [the original note holder] in the first place. *[The] testimony about standard mortgage industry practice only arguably established that such records are generated and kept in the ordinary course of mortgage loan servicing.*

*Id.* (emphasis added).

In the instant case, the asset manager testified that he knew about the record keeping practices of Wells Fargo and Consumer Solutions because both companies appeared to do things within "the generally accepted servicing practice," according to their records. The witness did not identify any particular record-keeping system used by either Wells Fargo or Consumer Solutions, and he did not testify he was personally familiar with any record-keeping system used by either prior note holder. The issue is whether the knowledge of common standards and practices is enough to satisfy the requirements to lay the proper foundation for the business records exception.

As the First District held in *Hunter*, a witness's general testimony that a prior note holder follows a standard record-keeping practice, without discussing details to show compliance with section 90.803(6), is not enough to establish a foundation for the business records exception. When the foundation for the business records exception is sought through a subsequent note holder for documents containing electronic records of loan payments made to a prior note holder, the foundation must demonstrate compliance with section 90.803(6) based on personal knowledge.

As stated within the statute itself, one way to demonstrate compliance with section 90.803(6)(a) based on personal knowledge is the use of the self-authentication rules contained within section 90.902(11), Florida Statutes (2013), which states:

> (11) An original or a duplicate of evidence that would be admissible under s. 90.803(6), which is maintained in a foreign country or domestic location and is accompanied by a certification or declaration from the custodian of the records

7

or another qualified person certifying or declaring that the record:

(a) Was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person having knowledge of those matters;

(b) Was kept in the course of the regularly conducted activity; and

(c) Was made as a regular practice in the course of the regularly conducted activity,

provided that falsely making such a certification or declaration would subject the maker to criminal penalty under the laws of the foreign or domestic location in which the certification or declaration was signed.

§ 90.902(11), Fla. Stat. (2013). When the current note holder produces at trial a certification in accordance with section 90.902(11) as to the payment history maintained by each previous note holder, and then provides a witness to authenticate the records attributable to the current note holder, the records of payment history should be admissible. Such a procedure would assure compliance with all of the requirements for admission of a business record which relies in part on records from a prior note holder. The procedure would also satisfy the personal knowledge requirement for records kept by the previous note holder.

A subsequent note holder can also provide testimony consistent with that which was approved by the Second District in *WAMCO*, where the current note holder had procedures in place to check the accuracy of the information it received from the previous note holder.

We stress, however, that these examples of permissible methods of satisfying the business records exception are not exhaustive. As long as the bank can provide sufficient testimony to lay the proper foundation, payment history documents should be admitted into evidence.

Since the bank in this case did not provide information sufficient to satisfy the business records exception, the trial court erred by admitting the payment history into evidence. Without sufficient evidence to determine the amount due under the note and mortgage, the trial court erred in entering a foreclosure judgment in favor of the bank. Based on this error, we determine that the proper instruction on remand would be

to conduct further proceedings. *See Sas v. Fed. Nat'l Mortg. Ass'n*, 112 So. 3d 778, 779-80 (Fla. 2d DCA 2013) (remanding "for further proceedings to properly establish the amounts allegedly due and owing" where the Second District determined that the trial court erred in allowing a witness to testify regarding the contents of a business record to prove the amount owed over a hearsay objection); *see also Wolkoff v. Am. Home Mortg. Servicing, Inc.*, 39 Fla. L. Weekly D1159 (Fla. 2d DCA May 30, 2014) (distinguishing the case from *Sas*, reversed and remanded in order for the trial court to enter an order of dismissal because the reversal was not based on an errant evidentiary ruling, but because the bank failed to present any "evidence detailing any amounts due and owing").

*Compliance With A Condition Precedent*

Paragraph twenty-two of the mortgage required that notice of default and opportunity to cure had to be given before the bank was permitted to accelerate the amount due on the note. The trial court took judicial notice of an affidavit in the court file as evidence of compliance with paragraph twenty-two. We agree with Holt's argument that the evidence was insufficient to show compliance with paragraph twenty-two. As stated by our supreme court:

> Although a trial court may take judicial notice of court records . . . it does not follow that this provision permits the wholesale admission of hearsay statements contained within those court records. We have never held that such otherwise inadmissible documents are automatically admissible just because they were included in a judicially noticed court file. To the contrary, we find that documents contained in a court file, even if that entire court file is judicially noticed, are still subject to the same rules of evidence to which all evidence must adhere.

*Burgess v. State,* 831 So. 2d 137, 141 (Fla. 2002) (quoting *Stoll v. State,* 762 So. 2d 870, 876-77 (Fla. 2000)) (internal quotation marks omitted). Therefore, although the trial court could take judicial notice of the court file, the rules of evidence, including hearsay rules, still applied to the information contained within the court file.

It is true the copy of the *notice* required by paragraph twenty-two was admissible, over a hearsay objection, as a verbal act.

> A verbal act is an utterance of an operative fact that gives rise to legal consequences. Verbal acts, also known as statements

9

> of legal consequence, are not hearsay, because the statement
> is admitted merely to show that it was actually made, not to
> prove the truth of what was asserted in it.

*Arguelles v. State*, 842 So. 2d 939, 943 (Fla. 4th DCA 2003) (quoting *Banks v. State*, 790 So. 2d 1094, 1097-98 (Fla. 2001)). Since the copy of the notice contained in the court file was not offered to show that the declarations made in the notice were true, but instead, the *contents* of the notice, the copy of the notice constitutes a verbal act.

The *affidavits*, on the other hand, were offered to prove the truth of the matter asserted (that the notice was sent). Therefore, Holt's hearsay objection to the affidavits should have been sustained. *See* § 90.801(1)(c), Fla. Stat. (2013).[4]

The bank also argued to the trial court that the testimony of Holt proved that a notice complying with paragraph twenty-two was sent. However, Holt's testimony in that regard was as follows:

> Q: You recall receiving information that you defaulted on your
> note from your lender, correct?
>
> A: No, I don't recall.

As such, Holt's testimony was neither evidence that she did receive, nor did not receive, the notice; her testimony was simply that she did not recall *if* she received the notice.

We do not agree with Holt that insufficient evidence of compliance with paragraph twenty-two justifies dismissal of the entire case. Paragraph twenty-two requires notice to allow the bank to *accelerate* the balance due on the note. Failure to comply with paragraph twenty-two does not affect the bank's entitlement to foreclose on *past due installments*. If the trial court had ruled properly, it should have entered a judgment of foreclosure only for the amount past due on the note at the time of trial, and not the full accelerated balance of principal.

Because we remand the case for a redetermination of the amounts allegedly due and owing, we likewise remand the case regarding paragraph twenty-two with leave for the bank to properly prove compliance with the

---

[4] We do not address whether the affidavits could have been admissible as a business record, as that issue was not briefed on appeal. We also observe there was no evidence laying the foundation for the affidavits as business records.

paragraph. *Cf. Boyce Constr. Corp. v. Dist. Bd. of Trs. of Valencia Cmty. College*, 414 So. 2d 634, 635 (Fla. 5th DCA 1982) ("[W]e believe that justice can be served in this case only by reversal and remand for a new trial.").

*Affirmed in part, reversed in part and remanded.*

STEVENSON and FORST, JJ., concur.

* * *

**Not final until disposition of timely filed motion for rehearing.**