988 So.2d 103 (2008)
Herman HAMPTON, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-3990.
District Court of Appeal of Florida, Second District.
July 18, 2008.
*104 James Marion Moorman, Public Defender, and Allyn M. Giambalvo, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Susan M. Shanahan, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Chief Judge.
We previously reversed Herman Hampton's conviction and sentence for robbery. See Hampton v. State, 975 So.2d 544 (Fla. 2d DCA 2008) (opinion withdrawn from bound volume). Thereafter, however, we withdrew our mandate, and we now affirm and remand with directions. How this turnabout came to pass warrants discussion.
Hampton's appellate counsel complained that the trial court had found him incompetent to stand trial but then allowed him to waive his right to a jury trial and actually started the bench trial before determining that Hampton had regained his competency. The record on appeal supported this assertion. It contained a written pretrial order finding Hampton incompetent to stand trial but no order finding that he had become competent prior to his waiver of his right to trial by jury and the commencement of his bench trial. We were compelled to reverse and remand for a new trial. We received no motion for rehearing, and our mandate was timely issued.
On remand, however, the trial judge announced that he would not retry Hampton in compliance with our mandate. The judge served on this court a "Response to Mandate," apparently filed in the circuit court, in which he maintained that he had indeed found Hampton restored to competency prior to the pertinent proceedings. The judge recounted that he did so orally, without a written order, "as is the practice in this circuit." He attached an appendix containing materials from the circuit court case file. He also submitted a hearing transcript, produced by the court reporter two days after the release of our opinion, reflecting his pretrial ruling that Hampton had regained his competency. The judge further observed that there was a scrivener's error in the circuit court case progress record, which indicated that Hampton was found incompetent at the particular hearing when, in fact, he had been found competent. He opined that "this appellate litigation would have not been necessary had appellate counsel for the parties taken the time to communicate with trial counsel for the parties, or had they taken the time to review the circuit court file." The judge concluded by asking us to rescind our directive:
This court suggests and requests that the District Court vacate its opinion and Mandate, and substitute them with a different opinion and Mandate, taking the complete and correct record of these correctly described proceedings in the Circuit Court into consideration.
Thereafter, this court received neither a motion to recall mandate from the State nor a motion to enforce mandate from Hampton. Finally, on our own motion we recalled the mandate to avoid the expiration of the term of court. See State Farm Mut. Ins. Co. v. Judges of Dist. Court of *105 Appeal, Fifth Dist., 405 So.2d 980, 982 (Fla.1981) (observing that an appellate court's power to recall its mandate is limited to the term in which it was issued). We ordered the State to supplement the record and to respond to the trial judge's assertions. We have received the supplemental record. It demonstrates that the trial judge orally found Hampton to be competent before he waived his right to a jury trial, and the State has asked us to reconsider our reversal in this case.
Before addressing the State's request, we must note our disapproval of the trial judge's "Response to Mandate," which we strike as unauthorized. We deeply respect the judge as an accomplished, experienced, and skilled jurist. We also acknowledge his understandable frustration at being directed to retry a case on the basis of a perceived error that did not occur, and we are confident that he was well-motivated. Still, the judge's filing in this court was misguided in several respects, foremost among them being his supposition that he was empowered to disregard our mandate. To the contrary, "having received a clear directive from the district court of appeal exercising appellate jurisdiction over the matter before him, the circuit judge was legally obliged to follow it; indeed, he was powerless to do otherwise." McGlade v. State, 941 So.2d 1185, 1189 (Fla. 2d DCA 2006). In his "Response to Mandate" the judge outlined his intention to call the prosecutor and defense counsel into his courtroom, advise them that he would not empanel a jury or conduct a new trial, and direct defense counsel to appeal. In such an event, we would have quickly quashed the judge's action. See id.[1]
Our second criticism of the "Response to Mandate" is that it was submitted to us at all. Certainly, the trial judge appropriately could advise the parties of his concerns about the accuracy of the record on which this court based its decision and its directive to conduct a new trial. But it was for the parties to seek appropriate relief. It is not within a trial judge's purview to advocate in this court for a particular disposition of a case. Obviously, the judge has no standing to do so, and any such advocacy in this court would be incompatible both with the judge's obligation to abide by our mandate and with his duty to serve as an independent and impartial arbiter of the dispute between the parties before him.
Finally, we do not join the trial judge's criticism of appellate counsel for not having "taken the time to communicate with trial counsel" or "taken the time to review the circuit court file." This court is acutely aware of the overwhelming workload shouldered by the assistant attorneys general and appellate public defenders who appear before us. With woefully inadequate resources, they are duty-bound to prosecute and defend countless criminal appeals from five judicial circuits comprising fourteen counties. Day in and out, they employ their considerable professional skills performing valuable service to their respective clients and to the cause of justice. In this case they were furnished with a record on appeal that offered no hint of the trial judge's finding that Hampton had regained his competency before *106 waiving his right to a jury trial. Indeed, the record on appeal included the circuit court case progress record that reported to the contrary and thus corroborated the appellate record. It is true, as the trial judge believed, that this imbroglio might have been avoided if appellate counsel had consulted the trial attorneys involved in the case below. But under the circumstances, it is not surprising that they did not. In short, neither the record on appeal nor the circuit court case file offered any reason to believe that the trial judge had made a pretrial finding that Hampton's competency was restored.
On the other hand, the record certainly would have been accurate if the pretrial determination that Hampton was competent had been memorialized in a written order. Florida Rule of Criminal Procedure 3.212(c)(7) directs that if a trial court concludes that a heretofore incompetent defendant has become competent to stand trial, "it shall enter its order so finding and shall proceed." (Emphasis supplied.) For many years, this court and others have interpreted versions of the rule employing essentially the same language as requiring the entry of a written order. Marshall v. State, 351 So.2d 88 (Fla. 2d DCA 1977); see also Corbitt v. State, 744 So.2d 1130 (Fla. 2d DCA 1999) (stating that when defendant has been adjudicated incompetent, applicable rule requires court to enter written order finding defendant restored to competency); White v. State, 548 So.2d 765 (Fla. 1st DCA 1989); Samson v. State, 853 So.2d 1116 (Fla. 4th DCA 2003); Molina v. State, 946 So.2d 1103 (Fla. 5th DCA 2006).
All of that said, we now revisit our determination to reverse Hampton's conviction and remand for a new trial. Notwithstanding our disapproval of the trial judge's ill-advised approach to this unusual situation, we share his desire to reach a just and correct result. We cannot in good conscience reaffirm our previous decision, knowing as we do that it was founded on a materially inaccurate record and that ordering a retrial under these circumstances would amount to a gratuitous consumption of scant judicial resources.[2]
Where, as here, a court has orally found a defendant competent but erroneously failed to enter the required written order, we have affirmed with directions to enter the order nunc pro tunc. See, e.g., Corbitt, 744 So.2d 1130. Therefore, we withdraw our February 6, 2008, opinion in this case. We affirm the conviction and sentence under review, and we remand for entry of the appropriate written order nunc pro tunc.
Affirmed with directions.
GALLEN, THOMAS M., Associate Senior Judge, Concurs.
SALCINES, J., Concurs in result only with opinion.
SALCINES, Judge, Concurring in result only.
I concur in result only. While I do not disagree that a trial court must honor an appellate court's mandate, I would not be so quick to criticize a trial judge for alerting the attorneys of record to the fact that our decision was based on an incomplete and incorrect record.
*107 The trial judge's "Response to Mandate" was not directed as an affront to our authority. In fact, it was not even filed in our courtit was styled in the circuit court case and filed in the circuit court. A courtesy copy was sent to our clerk. It was directed to the attorneys for the State and the defendant, including the appellate attorneys, suggesting that they bring this matter to the appellate court's attention for further review. Based on the record before this court, it appears the trial judge took no further action on his response.
The trial judge provided a correct procedural chronology, medical reports, and transcripts (not previously provided by any of the appellate counsel even after we asked them to supplement the record). He informed the trial and appellate attorneys that the transcripts of the proceeding demonstrated that he had "performed correctly in the first instance." Since the trial judge felt that the appellate lawyers had not taken appropriate measures to present a correct record, I interpret his closing paragraph as a suggestion to the trial and appellate attorneys of record to present the matter to our court for our reconsideration in light of the fact that our opinion was based on an incomplete and incorrect record. The response was, in effect, a "Notice to Counsel."
Thanks to the alert trial judge we now have reached the correct and just result. It was the trial judge who, upon reading our first opinion, retrieved the missing transcript. It was he who discovered that the "in court" deputy clerk had correctly entered the court's finding, which was based on a stipulated agreement between the parties, that the defendant was "competent" to stand trial. It was he who discovered that a scrivener's error had occurred when the subsequent computer entry was made in the progress docket by an "after court" clerk, and this subsequent entry incorrectly reflected that the defendant had been found "incompetent" to stand trial. It was only through the efforts of the trial judge that the complete record was ultimately provided to this court by the State.
It appears that, but for the trial judge's action, we would not have reached the just and correct result that we now reach. But for the trial judge's efforts, our original reversal would have stood and with it a "gratuitous consumption of scant judicial resources" would have certainly followed. When all is said and done, the end result is that we now acknowledge that the trial judge made the correct decision in the first place.
Hopefully, the circumstances of this case are very rare. In this unique situation, I believe the trial court's well-intended, albeit novel, action served to achieve the correct result, promoting the credibility of the judiciary and not undermining it.
NOTES
[1] In the meantime, Hampton's speedy trial period would have been running. See Fla. R.Crim. P. 3.191(m) (providing that a person who is to be tried again must be brought to trial within 90 days after the trial court has received the appellate mandate). Thus, the trial judge's determination to defy our mandate that he retry Hampton because he felt that Hampton's initial conviction should have been affirmed might well have jeopardized the State's ability to obtain any conviction in this case.
[2] Although highly unusual, our action is not unprecedented. See T.J.A. v. State, 31 Fla. L. Weekly D1124 (Fla. 2d DCA Apr. 21, 2006) (reversing because absence of adjudicatory hearing transcript precluded court from reviewing Anders case), opinion withdrawn and superseded upon denial of rehearing, 939 So.2d 237 (Fla. 2d DCA 2006) (affirming after pertinent transcripts belatedly furnished).