IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

TUSH-EE LEWIS HUNTER,

     Appellant,

v.

STATE OF FLORIDA,

     Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D13-0862

Opinion filed May 12, 2015.

An appeal from the Circuit Court for Okaloosa County.
John T. Brown, Judge.

Christine Ann Guard, Special Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Trisha Meggs Pate, Assistant Attorney General, Tallahassee, for Appellee.

MARSTILLER, J.

     Tush-ee Lewis Hunter appeals his convictions and sentences for robbery with a deadly weapon and aggravated assault on a person 65 or older asserting the following errors by the trial court: (1) failure to conduct a competency hearing and enter a written order finding Hunter competent for trial after previously

adjudicating him incompetent to proceed; (2) failure to exclude from evidence the substance of a 9-1-1 call that included double hearsay; and (3) failure to let the jury find the enhancement factors required for sentencing a defendant as a Habitual Violent Felony Offender ("HVFO") and a Prison Releasee Reoffender ("PRR"). We conclude the trial court committed no reversible error. Therefore, we affirm Hunter's convictions and sentences, but, as explained below, remand for entry of a written order finding Hunter competent to stand trial.

Hunter first asserts that the trial court failed to hold the mandatory hearing under Florida Rule of Criminal Procedure 3.212(c) for a judicial competency determination after receiving a report from the state hospital indicating Hunter, previously adjudicated incompetent, had regained competency to proceed with trial. Rule 3.212(c) provides, in pertinent part:

> (5) [After a court orders commitment due to incompetency] . . . No later than 6 months from the date of admission, the administrator of the facility shall file with the court a report that shall address [the defendant's competency]. If, at any time during the 6-month period . . . the administrator of the facility determines that the defendant no longer meets the criteria for commitment or has become competent to proceed, the administrator shall notify the court by such a report, with copies to all parties.
> (6) The court shall hold a hearing within 30 days of the receipt of any such report from the administrator of the facility on the issues raised thereby. If, following the hearing, the court determines that the defendant continues to be incompetent to proceed and

2

that the defendant meets the criteria for continued commitment or treatment, the court shall order continued commitment or treatment for a period not to exceed 1 year. When the defendant is retained by the facility, the same procedure shall be repeated prior to the expiration of each additional 1-year period of extended commitment.

(7)   If, at any time after such commitment, the court decides, after hearing, that the defendant is competent to proceed, *it shall enter its order so finding* and shall proceed.

(Emphasis added.)  A trial court's failure to follow this procedure and adjudicate a defendant competent before moving on to the next material stage of the criminal proceedings is reversible error. *See Jackson v. State*, 880 So. 2d 1241, 1242 (Fla. 1st DCA 2004); *Samson v. State*, 853 So. 2d 1116, 1117 (Fla. 4th DCA 2003). "An individual adjudicated incompetent is presumed to remain incompetent until adjudicated restored to competence." *Samson*, 853 So. 2d at 1116 (citing *Alexander v. State*, 380 So. 2d 1188, 1189 (Fla. 5th DCA 1980)).  And "a criminal prosecution may not move forward at any material stage of a criminal proceeding against a defendant who is incompetent to proceed." *Caraballo v. State*, 39 So. 3d 1234, 1252 (Fla. 2010).

It is not entirely clear from the record before us that the trial court indeed failed to hold the required hearing or find Hunter competent to be tried.  The competency hearing was specifically noticed for July 23, 2012, and it took place, but the court made no determination because defense counsel sought psychiatric

3

reevaluation of Hunter—which the court permitted—primarily to address whether he was insane at the time of the charged offenses. At the time of the hearing, the court had reports from two forensic mental health specialists deeming Hunter competent to stand trial. Subsequently, at an August 16, 2012, status conference, defense counsel stated affirmatively, "[Hunter is] competent to proceed for competency but he still could be insane at the time, today." The court replied, "Okay," and defense counsel requested a further continuance to do more research on whether a defendant can be insane yet competent to stand trial.

We dealt with a somewhat similar scenario in *Martinez v. State*, 851 So. 2d 832 (Fla. 1st DCA 2003). There, the defendant, previously adjudicated incompetent, was deemed restored to competency by mental institution staff. *Id*. at 833. Apparently at the outset of a plea hearing, defense counsel represented to the trial court that two doctors had concluded the defendant was competent to proceed, to which the judge responded, "All right, sir," and went on to accept the defendant's guilty plea and sentence him. *Id*. at 834. We construed the judge's response, under the circumstances, as an oral determination of competency, notwithstanding that a hearing on the matter had not occurred. *Id*.

Similarly, here, we construe the trial court's affirmative response to defense counsel's representation at the August 16, 2012, status conference as an oral determination of Hunter's competency. Unlike the scenario in *Martinez*, the trial

4

court in this case did schedule and convene a competency hearing, and, on the record, did consider the two reports from the forensic mental health specialists concluding that Hunter's competency was restored. Moreover, the progress docket in the record indicates several more continuances after the August 16, 2012, status conference, at which point it is clear defense counsel's focus was on having Hunter declared insane. According to the docket, a hearing occurred on September 28, 2012. Strangely, that hearing was not recorded; consequently, there is no transcript in the record. But subsequent docket entries and filings in the record show that the usual trial preparation activity ensued and, ultimately, the trial itself was held in December 2012. Thus, the record before us indicates the trial court did determine Hunter was competent to go to trial. "[W]e will not presume that the court acted contrary to the dictates of the law by declining to make such a finding once it was aware of the prior adjudication of incompetency." *Martinez*, 851 So. 2d at 835.

Nevertheless, the record decidedly lacks a written order from the trial court adjudicating Hunter competent for trial, as required by rule 3.212(c)(7). As we did in *Martinez*, we simply remand to the trial court to enter the needed written adjudication *nunc pro tunc*. *See id*., at 834; *see also Powell v. State*, 28 So. 3d 958, 958 (Fla. 1st DCA 2010); *Bailey v. State*, 931 So. 2d 224, 225 (Fla. 1st DCA 2006); *White v. State*, 548 So. 2d 765, 768 (Fla. 1st DCA 1989); *Hampton v. State*, 988 So. 2d 103, 106 (Fla. 2d DCA 2008).

Hunter next argues that the trial court abused its discretion in admitting the recording of a 9-1-1 call which, although redacted in part before being played for the jury, was tainted by double hearsay. State's witness Alex Taylor testified he made the call immediately upon seeing two men chasing a third knife-wielding man, yelling they had just been robbed, and telling Taylor to call 9-1-1. On the stand, Taylor described who and what he saw the night in question, and stated that he had been accompanied at the time by a Mr. Thompson.

The trial court admitted the recording under the excited utterance hearsay exception, see section 90.803(2), Florida Statutes—a ruling Hunter does not challenge in whole. Rather, Hunter argues that certain of Mr. Taylor's statements to the 9-1-1 operator were based on information fed to him by Mr. Thompson, who was unavailable for trial and whose statements could not be established as excited utterances.

In the unredacted recording of Mr. Taylor's 9-1-1 call, Mr. Thompson is the unidentified speaker:

> Q. Police department, where is your emergency?
> A. I'm here at Fort Walton Temple Mound.
> Q. The Indian Temple Mound?
> A. Yeah.
> Q. Okay. What's going on there?
> A. I just witnessed a robbery (inaudible).
> Q. Okay. What does the guy look like?
> A. Okay. The guy was kind of heavy set, short dude. He was about 5'6, 5'7, 5'8.
> UNIDENTIFIED SPEAKER: Long hair.

6

Q. Was he black or white?
A. He was white. What color was his hair?
UNIDENTIFIED SPEAKER: Black hair.
A. He had dark hair.
UNIDENTIFIED SPEAKER: Black backpack.
A. Black backpack. He had a tattoo on his arm, and he's wearing a green shirt and shorts.
Q. A green shirt and shorts?
A. Yeah. His shorts weren't green, sorry.
Q. What color were the shorts?
A. His shorts were black.
Q. And he had a tattoo on what arm?
A. He had a tattoo on his right arm (inaudible).
UNIDENTIFIED SPEAKER: (Inaudible.)

The call continued to conclusion with only Taylor and the 9-1-1 operator speaking. At trial, the court permitted the State to play the recording for the jury with only the statements of the unidentified speaker redacted.

"A trial court's decision to admit evidence is reviewed for abuse of discretion, subject, of course, to the rules of evidence and case law." *Hunter v. Aurora Loan Services, LLC*, 137 So. 3d 570, 572 (Fla. 1st DCA 2014) (citing *Gregory v. State*, 118 So. 3d 770, 780 (Fla. 2013)). Under the Florida Evidence Code, "[h]earsay within hearsay is not excluded under s. 90.802, provided each part of the combined statements conforms with an exception to the hearsay rule as provided in s. 90.803 or s. 90.804." § 90.805, Fla. Stat. (2012). Hunter correctly characterizes those of Mr. Taylor's statements conveying information from the unidentified speaker as inadmissible hearsay within hearsay. *See, e.g.*, *Smith v. State*, 880 So. 2d 730, 741 (Fla. 2d DCA 2004) (holding recorded statements of

7

eyewitnesses to a shooting relaying the shooter's alleged statements constituted hearsay within hearsay and were inadmissible absent predicate showing shooter's and eyewitnesses' statements independently satisfied a hearsay exception).

However, we find the trial court's error harmless. The offending statements by Mr. Taylor were, "He had dark hair" and "Black backpack." The information about the perpetrator having a black backpack was merely cumulative to Mr. Taylor's and the victim's son's testimony that the perpetrator had a backpack. Furthermore, neither the color of the perpetrator's backpack nor the color of the perpetrator's hair was crucial to identifying Hunter as the perpetrator. Rather, throughout the trial, the identification largely turned on the nature and location of the perpetrator's "Semper Fi" arm tattoo. Moreover, the victim's son identified Appellant from a photo lineup prior to trial and identified Appellant in court. Therefore, we conclude there is no reasonable possibility that admission of Mr. Taylor's two offending statements affected the jury's verdict. *See State v. DiGiulio*, 491 So. 2d 1129, 1139 (Fla. 1986).

Finally, Hunter argues that under *Alleyne v. United States*, ___ U.S. ___, 133 S.Ct. 2151 (2013), the trial could not impose enhanced HVFO and PRR sentences without requiring the State to prove up the enhancement factors to the jury. But "[t]he touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an 'element' or 'ingredient' *of the*

8

*charged offense.*" *Alleyne*, ___ U.S. at ___, 133 S.Ct. at 2158 (emphasis added). For this reason, we have held that *Alleyne* does not apply to PRR sentencing because the key pertinent fact—whether the defendant committed the charged offense within three years of being released from prison—is not an element or ingredient of the charged offense.[1] *Williams v. State*, 143 So. 3d 423, 424 (Fla. 1st DCA 2014), *rev. denied*, ___ So. 3d ___, 2014 WL 6977641 (Fla. Dec. 9, 2014). The same reasoning applies to HVFO sentencing, where the key pertinent fact is whether the defendant has a prior conviction for one of the felonies enumerated in section 775.084(1)(b)1., Florida Statutes. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added); *Luton v. State*, 934 So. 2d 7, 9-10 (Fla. 3d DCA 2006); *McBride v. State*, 884 So. 2d 476, 478 (Fla. 4th DCA 2004). Accordingly, we hold *Alleyne* does not apply to HVFO sentencing.

AFFIRMED; REMANDED with directions.


LEWIS, C.J., CONCURS; BENTON, J., DISSENTS WITH OPINION.

---

[1] Our decision in *Williams* was published after briefing concluded in this case.

BENTON, J., dissenting.

"In order to proceed against a defendant who has been adjudicated incompetent, the trial court first must hold a hearing to determine whether the defendant's competency has been restored, review evidence from experts during the hearing, make an independent determination that the defendant's competency has been restored, and enter a written order to that effect." Ross v. State, 155 So. 3d 1259, 1259 (Fla. 1st DCA 2015). "If, at any time after . . . commitment [for treatment to restore a defendant's competence to proceed], the court decides, after hearing, that the defendant is competent to proceed, it shall enter its order so finding and shall proceed." Fla. R. Crim. P. 3.212(c)(7). But not otherwise. In the present case, the trial court never took testimony, never received any written report in evidence, and never determined whether the defendant was competent to proceed. Accordingly, I respectfully dissent.

Mr. Hunter had been adjudicated incompetent to proceed in January of 2012, and committed at that time for treatment to restore competence. A competency evaluation report, prepared on June 18, 2012, catalogued hospitalizations for psychiatric reasons beginning at age fourteen, including an admission to Florida State Hospital after being adjudicated not guilty by reason of insanity on an earlier criminal charge. The report also noted numerous suicide attempts, and that he had cut himself nine times during his current commitment. (His conduct resulted in

10

special supervision by at least one and sometimes two staff members "at all times . . . over the past four months," and in his inability to attend classes or group therapy. He was instead provided individual therapy by a "Psychology Intern.") The competency evaluation report was attached to a letter the Department of Children and Families sent to the trial court, also in June of 2012, indicating he was competent to proceed.[2]

Relying in part on the fact that a competency hearing was noticed for July 23, 2012, the majority opinion concludes that a competency hearing actually took place on that date,[3] although it acknowledges that the trial court "made no determination" of competence because defense counsel sought reevaluation of Mr. Hunter. At the July 23, 2012 hearing, defense counsel clearly stated there was "still a question about sanity, sanity at the time, and sanity now." Defense counsel requested that Mr. Hunter be evaluated both as to insanity at the time of the offense and as to insanity or incompetence "at the present time." After a brief discussion

---

[2] The trial court observed: "One thing that was interesting is that, I read through the report, and I saw different findings in there. But I didn't see the strong language that there was in the cover letter that was done by the staff assistant, not the same doctor. The staff assistant says, competent to proceed, no longer meets criteria. But unless I just overlooked it, I didn't see that in the report. I saw again, a lot of different findings but I never saw a real firm conclusion. But again, it was a lot of pages and I may have missed it."

[3] The trial court docket entry for July 23, 2012, indicates the following: "COURT RESULT: HEARING HELD;" "EVALUATION TO BE PERFORMED TO DETERMINE SANITY AT TIME OF OFFENSE;" "CALENDAR STATUS DATE SET FOR 08/03/2012;" "DOCKET DAY FELONY SET FOR 08/16/2012;" and "CRIMINAL JURY TRIAL FELONY SET FOR 08/20/2012."

regarding "who pays" for an evaluation, defense counsel stated "he's insane at this time. I was told that was a possibility." No ruling on competence to proceed was made on July 23, 2012, however.

On August 16, 2012, a short hearing or status conference was held.[4] At the start of this proceeding, the following exchange occurred:

> MR. HILLEY: Judge, I got another letter from Mr. Barnes, that inside medical isolation, he's inside the isolation of the isolation because I came down to see him and he was strapped down because he tried to kill himself again.
> I couldn't see him the other day. There's indication, my motion for – he was insanity (sic) at the time – but I've been talking with Mr. Barnes. I think he's competent to proceed and I've never heard of this before and I'm trying to do research on it, Judge.
> He's competent to proceed for competency but he still could be insane at the time, today.
> THE COURT: Okay.
> MR. HILLEY: And can I file, I guess I would file a motion to ask for an insanity, presently, if the State was going to object or I can just put the order in. I mean, that has no bearing on it.
> MR. REED: Proceed, Judge. I think if he wants to do something like that just for your own knowledge, you'd have to pay for it yourself. I don't think the JAC is going to pay for something like that.
> MR. HILLEY: If he's insane right now then he can't be tried.[5]

---

[4] There were two docket entries between July 23 and August 16, 2012. The trial court docket entry for August 3, 2012, states only "COURT RESULT: HEARING HELD." The trial court docket entry for August 15, 2012, indicates: "CORRESPONDENCE TO THE COURT FROM FORENSIC MENTAL HEALTH SPECIALIST RE: BEHAVIOR (NON PUBLIC)" and "MOTION FOR RE-PSYCHOLOGICAL EVALUATION AND APPOINTMENT OF EXPERT WITNESS."

[5] The transcript continues:

> MR. REED: No, it's incompetent, right now or

12

Defense counsel's statement that Mr. Hunter was "competent to proceed for

competency" was not a stipulation or concession that Mr. Hunter was competent to

insane at the time of the offense. It's two different –
> MR. HILLEY: No, those are the procedurally. We've never had one insane, right now in competency. I'm trying to do the research, Judge, and – and cause it's just I've never had that ever.
> MR. REED: Well, if you could set this for a hearing, Judge, so –
> MR. HILLEY: We do have the order – it's either to you or it's on the way to you.
> THE COURT: You got a motion that's coming to me?
> MR. HILLEY: No. The order for the insanity at the time.
> THE COURT: Okay.
> MR. HILLEY: And he's not objecting to that.
> MR. REED: No, we're not objecting to that, Judge. It's insanity, currently.
> THE COURT: Right.
> MR. HILLEY: And I've never had that insane now but competency. But –
> THE COURT: Okay. So what do you want to do?
> MR. HILLEY: We want to continue it, Judge. . . . We have the order for the insanity at the time and then I'm going to do the research and see if there is, how do I approach that now. I'll give it to the State if there's some case law on it, we'll just send an order over to have him evaluated for insanity now if it hasn't any bearing.
> If my research says it doesn't have any bearing, I'm going to – I'll just announce it that my research shows that we're going to have to proceed with trial.
> THE COURT: Okay. So we'll just set it for a status, is that right?

The trial court's docket entry for August 16, 2012, indicates: "COURT RESULT: CONTINUED" and "STATUS CALL DATE SET FOR 08/29/2012."

13

assist in his defense or to enter a plea.

The trial court's interjection in response, "Okay," (which was immediately followed by defense counsel's stating he "would file a motion to ask for an insanity, presently, if the State was going to object") cannot fairly be construed as a finding that Mr. Hunter was competent to stand trial. Cf. Boone v. State, 805 So. 2d 1040, 1041 (Fla. 4th DCA 2002) (remanding to the trial court for entry of a written order where the "trial court clearly announced its finding that Boone was competent to stand trial" but failed to enter a written order). Indeed, the trial court began seven of his twenty-one utterances[6] on August 16, 2012, with the word "Okay."

Nor does the record of the status conference or hearing reflect any basis for a finding that Mr. Hunter was competent to proceed. As our supreme court has recently explained:

> Generally, a proper hearing to determine whether competency has been restored after a period of incompetence requires "the calling of court-appointed expert witnesses designated under Florida Rule of Criminal Procedure 3.211, a determination of competence to proceed, and the entry of an order finding competence." . . . "[W]here the parties and the judge agree, the trial [c]ourt may decide the issue of competency on the basis of the written reports alone." Nevertheless, these written reports are advisory to the

---

[6] "Okay" was the trial court's complete statement on four of these seven occasions, including the occasion to which the majority opinion refers. Additionally, the trial court concluded two other statements with "Okay."

14

trial court, "which itself retains the responsibility of the decision." Accepting a stipulation improperly absolves the trial court from making an independent determination regarding a defendant's competency to stand trial.

We note that our prior cases, in which we held that the trial court retains the responsibility to determine if the defendant is competent, generally involved conflicting testimony or evidence regarding a defendant's competency. However, nothing in our precedent or the State's argument persuades us that a defendant can stipulate to the ultimate issue of competency, even where the written reports reach the same conclusion. Even in a situation where all the experts opine that a defendant is competent, the trial court could presumably disagree based on other evidence such as the defendant's courtroom behavior or attorney representations. Further, the language of rule 3.212(c)(7) and rule 3.212(b) discussed above does not allow parties to stipulate to the issue of competency. In particular, the rules do not contemplate such stipulations where the trial court has previously concluded that a particular defendant is incompetent and his competency has yet to be restored. Thus, based on our precedent and the procedural rules for competency determinations, a defendant cannot stipulate that he is competent, particularly where he has been previously adjudicated incompetent during the same criminal proceedings. Further, if a trial court finds that a defendant is competent to proceed, it must enter a written order so finding.

Dougherty v. State, 149 So. 3d 672, 677 (Fla. 2014) (citations omitted) (footnotes omitted). See also Macaluso v. State, 12 So. 3d 914, 915 (Fla. 4th DCA 2009) ("If the Rule wanted lawyers to be able to stipulate to restored competency without an evidentiary hearing, it would have so stated in explicit terms."), approved by Dougherty, 149 So. 3d at 679.

15

"These requirements [including the review of 'evidence from experts during' a competency hearing] cannot be waived by a stipulation. Because there is no evidence in the record that the trial court conducted a competency hearing, reviewed evidence from any examining physicians, or made an oral or written finding that appellant had been restored to competence, appellant was presumed incompetent to proceed at any material stage, rendering his plea [here trial and conviction] invalid as a matter of law and subject to challenge for the first time on direct appeal." Ross, 155 So. 3d at 1259-60 (citations omitted). In the present case, even if the trial court's "Okay" could be deemed acceptance of some (in fact nonexistent) stipulation by defense counsel, it would be legally insufficient. Dougherty, 149 So. 3d at 678.[7]

The trial court did not make "an independent determination regarding [Mr. Hunter's] competency to stand trial." Id. Although there was a brief reference to

---

[7] The majority opinion's reliance on Martinez v. State, 851 So. 2d 832 (Fla. 1st DCA 2003), is misplaced. There, we addressed only the defendant's contention that the trial court erred in failing to enter a written order finding him competent to proceed. Id. at 833-34 (concluding that "the pertinent provisions of the [Criminal Appeal Reform Act of 1996 did not] dispossess this court from jurisdiction to remand to the trial court for the sole purpose of memorializing in writing an oral finding made by the court" and that "[n]either the defendant nor the state has contended on appeal that" the trial court's statement, "All right, sir," after defense counsel informed the court that two doctors had concluded the defendant was competent to proceed, "was anything less than a finding of competency"). In addition, after Dougherty v. State, 149 So. 3d 672 (Fla. 2014), a stipulation is inadequate to support such a finding.

16

the competency evaluation report during the July 23, 2012 hearing, there was no stipulation (during either the July 23, 2012 hearing or the August 16, 2012 hearing) that the trial court could rule on the question of competency to proceed based on a written report alone. In fact, there is no indication in the transcript of either hearing that any written report was ever offered or admitted into evidence.

In S.B. v. State, 134 So. 3d 528, 529 (Fla. 4th DCA 2014), defense counsel and the state stipulated to the defendant's competency, but there was no stipulation to the contents or to the admission of the doctor's report for the determination of competency. Nor was there any agreement to decide the issue of competency on the basis of written report(s) alone. Without further hearing or evidence, the trial court entered a written order finding that the defendant was competent to proceed. The Fourth District reversed: "Although it can be argued that by stipulating to the report's determination of competency, the parties stipulated to the report and agreed to determine competency based on the report alone, there is nothing in the case law to suggest that such implicit stipulations and agreements are sufficient to satisfy rule 3.212. Therefore, the trial court erred in its finding of Defendant's competency." Id. at 530 (citations omitted).

In Macaluso, 12 So. 3d at 915, as here, the defendant was adjudicated incompetent to stand trial and committed for treatment to restore competence. At a hearing conducted five months later, his attorney advised the court that he had

17

since been found competent based on evaluations that were obtained by the Public Defender's Office. The trial court thereupon declared the defendant competent to stand trial, "[w]ithout further hearing or evidence." Id. The Fourth District reversed, concluding "the competency issue was improperly decided" and stating the case was "returned to its status before the trial judge spontaneously declared defendant competent without hearing or evidence." Id. See also Roman v. State, 40 Fla. L. Weekly D421, D422 (Fla. 2d DCA Feb. 13, 2015) (noting, in reversing convictions entered after the defendant was adjudicated incompetent to proceed, that "the parties did not stipulate to have the trial court decide Roman's competency on the basis of experts' reports").

It is "entirely clear" from the record before this court that the trial court did not make the requisite determination of Mr. Hunter's competency. See Dougherty, 149 So. 3d at 676 ("In Drope v. Missouri, 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), the United States Supreme Court recognized that 'the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial.'"); State v. Tait, 387 So. 2d 338, 341 (Fla. 1980) (same). Because the trial judge never conducted a true competency hearing, and never made a determination that Mr. Hunter was competent to proceed, Mr. Hunter remained incompetent to proceed, as a matter of law.

18

The conviction and sentence should be reversed, and the case should be remanded for a new trial once it is determined that the defendant has regained competency to proceed.