MARSTILLER, J.
Tush-ee Lewis Hunter appeals his convictions and sentences for robbery with a deadly weapon and aggravated assault on a person 65 or older asserting the following errors by the trial court: (1) failure to conduct a competency hearing and enter a written order finding Hunter competent for trial after previously adjudicating him incompetent to proceed; (2) failure to exclude from evidence the substance of a 9-1-1 call that included double hearsay; and (3) failure to let the jury find the enhancement factors required for sentencing a defendant as a Habitual Violent Felony Offender (“HVFO”) and a Prison Releasee Reoffender (“PRR”). We conclude the trial court committed no reversible error. Therefore, we affirm Hunter’s convictions and sentences, but, as explained below, remand for entry of a written order finding Hunter competent to stand trial.
Hunter first asserts that the trial court failed to hold the mandatory hearing under Florida Rule of Criminal Procedure 3.212(c) for a judicial competency determination after receiving a report from the state hospital indicating Hunter, previously adjudicated incompetent, had regained competency to proceed with trial. Rule 3.212(c) provides," in pertinent part:
(5) [After a court orders commitment due to incompetency] ... No later than 6 months from the date" of admission, the administrator of the facility shall file with the court a report that shall address [the defendant’s competency]. If, at any time during the 6-month period ... the administrator of the facility determines that the defendant no longer meets the criteria for commitment or has become competent to proceed, the *1014 administrator shall notify the court by such a report, with copies to all parties.
(6) The court shall hold a hearing within 30 days of the receipt of any such report from the administrator of the facility on the issues raised thereby. If, following the hearing, the court determines that the defendant continues to be incompetent to proceed and that the defendant meets the criteria for continued commitment or treatment, the court shall order continued commitment or treatment for a period not to exceed 1 year. When the defendant is retained by the facility, the same procedure shall be repeated prior to the expiration of each additional 1-year period of extended commitment.
(7) If, at any time after such commitment, the court decides, after hearing, that the defendant is competent to proceed, it shall enter its order so finding and shall proceed.
(Emphasis added.) A trial court’s failure to follow this procedure and adjudicate a defendant competent before moving on to the next material stage of the criminal proceedings is reversible error. See Jackson v. State, 880 So.2d 1241, 1242 (Fla. 1st DCA 2004); Samson v. State, 853 So.2d 1116, 1117 (Fla. 4th DCA 2003). “An individual adjudicated incompetent is presumed to remain incompetent until adjudicated restored to competence.” Samson, 853 So.2d at 1116 (citing Alexander v. State, 380 So.2d 1188, 1189 (Fla. 5th DCA 1980)). And “a criminal prosecution may not move forward at any material stage of a criminal proceeding against a defendant who is incompetent to proceed.” Caraballo v. State, 39 So.3d 1234, 1252 (Fla.2010).
It is not entirely clear from the record before us that the trial court indeed failed to hold the required hearing or find Hunter competent to be tried. The competency hearing was specifically noticed for July 23, 2012, and it took place, but the court made no determination because defense counsel sought psychiatric reevaluation of Hunter — which the court permitted — primarily to address whether he was insane at the time of the charged offenses. At the time of the healing, the court had reports from two forensic mental health specialists deeming Hunter competent to stand trial. Subsequently, at an August 16, 2012, status conference, defense counsel stated affirmatively, “[Hunter is] competent to proceed for competency but he still could be insane at the time, today.” The court replied, “Okay,” and defense counsel requested a further continuance to do more research on whether a defendant can be insane yet competent to stand trial.
We dealt with a somewhat similar scenario in Martinez v. State, 851 So.2d 832 (Fla. 1st DCA 2003). There, the defendant, previously adjudicated incompetent, was deemed restored to competency by mental institution staff. Id. at 833. Apparently at the outset of a plea hearing, defense counsel represented to the trial court that two doctors had concluded the defendant was competent to proceed, to which the judge responded, “All right, sir,” and went on to accept the defendant’s guilty plea and sentence him. Id. at 834. We construed the judge’s response, under the circumstances, as an oral determination of competency, notwithstanding that a hearing on the matter had not occurred. Id.
Similarly, here, we construe the trial court’s affirmative response to defense counsel’s representation at the August 16, 2012, status conference as an oral determination of Hunter’s competency. Unlike the scenario in Martinez, the trial court in this case did schedule and convene a competency hearing, and, on the record, did consider the two reports from the forensic mental health specialists concluding that *1015 Hunter’s competency was restored. Moreover, the progress docket in the record indicates several more continuances after the August 16, 2012, status conference, at which point it is clear defense counsel’s focus was on having Hunter declared insane. According to the docket, a hearing occurred on September 28, 2012. ■ Strangely, that hearing was not recorded; consequently, there is no transcript in the record. But subsequent docket entries and filings in the record show that the usual trial preparation activity ensued and, ultimately, the trial itself was held in December 2012. Thus, the record before us indicates the trial court did determine Hunter was competent to go to trial. “[W]e will not presume that the court acted contrary to the dictates of the law by declining to make such a finding once it was aware of the prior adjudication of incompetency.” Martinez, 851 So.2d at 835.
Nevertheless, the record decidedly lacks a written order from the trial court adjudicating Hunter competent for trial, as required by rule 3.212(c)(7). As we did in Martinez, we simply remand to the trial court to enter the needed written adjudication nunc pro tunc. See id., at 834; see also Powell v. State, 28 So.3d 958, 958 (Fla. 1st DCA 2010); Bailey v. State, 931 So.2d 224, 225 (Fla. 1st DCA 2006); White v. State, 548 So.2d 765, 768 (Fla. 1st DCA 1989); Hampton v. State, 988 So.2d 103, 106 (Fla. 2d DCA 2008).
Hunter next argues that the trial court abused its discretion in admitting the recording of a 9-1-1 call which, although redacted in part before being played for the jury, was tainted by double hearsay. State’s witness Alex Taylor testified he made the call immediately upon seeing two men chasing a third knife-wielding man, yelling they had just been robbed, and telling Taylor to call 9-1-1. On the stand, Taylor described who and what he saw the night in question, and stated that he had been accompanied at the time by a Mr. Thompson.
The trial court admitted the recording under the excited utterance hearsay exception, see section 90.803(2), Florida Statutes-a ruling Huntei; does not challenge in whole. Rather, Hunter argues that certain of Mr. Taylor’s statements to the 9-1-1 operator were based on information fed to him by Mr. Thompson, who was unavailable for trial and whose statements could not be established as excited utterances.
In the unredacted recording of Mr. Taylor’s 9-1-1 call, Mr. Thompson is the unidentified speaker:
Q. Police department, where is your emergency?
A. I’m here at Fort Walton Temple Mound.
Q. The Indian Temple Mound?
A. Yeah.
Q. Okay. What’s going on there?
A. I just witnessed a robbery (inaudible).
Q. Okay. What does the guy look like?
A. Okay. The guy was kind of heavy set, short dude. He was about 5'6, 5'7, 5'8.
UNIDENTIFIED SPEAKER: Long hair.
Q. Was he black or white?
A. He was white. What color was his hair?
UNIDENTIFIED SPEAKER: Black hair.
A. He had dark hair.
UNIDENTIFIED SPEAKER: Black backpack.
A. Black backpack. He had a tattoo on his arm, and he’s wearing a green shirt and shorts.
Q. A green shirt and shorts?
*1016 A. Yeah.[1] His shorts weren’t green, sorry.
Q. What color were the shorts?
A. His shorts were black.
Q. And he had a tattoo on what arm?
A. He had a tattoo on his right arm (inaudible).
UNIDENTIFIED SPEAKER: (Inaudible.)
The call continued to conclusion with only Taylor and the 9-1-1 operator speaking. At trial, the court permitted the State to play the recording for the jury with only the statements of the unidentified speaker redacted.
“A trial court’s decision to admit evidence is reviewed for abuse of discretion, subject, of course, to the rules of evidence and case law.” Hunter v. Aurora Loan Services, LLC, 137 So.3d 570, 572 (Fla. 1st DCA 2014) (citing Gregory v. State, 118 So.3d 770, 780 (Fla.2013)). Under the Florida Evidence Code, “[hjearsay within hearsay is not excluded under s. 90.802, provided each part of the combined statements conforms with an exception to the hearsay rule as provided in s. 90.803 or s. 90.804.” § 90.805, Fla.- Stat. (2012). Hunter correctly characterizes those of Mr. Taylor’s statements conveying information from the unidentified speaker as inadmissible hearsay within hearsay. See, e.g., Smith v. State, 880 So.2d 730, 741 (Fla. 2d DCA 2004) (holding recorded statements of eyewitnesses to a shooting relaying the shooter’s alleged statements constituted hearsay within hearsay and were inadmissible absent predicate showing shooter’s and eyewitnesses’ statements independently satisfied a hearsay exception).
However, we find the trial court’s error harmless. The offending statements by Mr. Taylor were, “He had dark hair” and “Black backpack.” The information about the perpetrator having a black backpack was merely cumulative to Mr. Taylor’s and the victim’s son’s testimony that the perpetrator had a backpack. Furthermore, neither the color of the perpetrator’s backpack nor the color of the perpetrator’s hair was crucial to identifying Hunter as the perpetrator. Rather, throughout the trial, the identification largely turned on the nature and location of the perpetrator’s “Semper Fi” arm tattoo. Moreover, the victim’s son identified Appellant from a photo lineup prior to trial and identified Appellant in court. Therefore, we conclude there is no reasonable possibility that admission of Mr. Taylor’s two offending statements affected the jury’s verdict. See State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986).
Finally, Hunter argues that under Alleyne v. United States, — U.S. -, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), the trial could not impose enhanced HVFO and PRR sentences without requiring the State to prove up the enhancement factors to the jury. But “[t]he touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an ‘element’ or ‘ingredient’ of the charged offense.” Alleyne, — U.S. at -, 133 S.Ct. at 2158 (emphasis added). For this reason, we have held that Alleyne does not apply to PRR sentencing because the key pertinent fact- — whether the defendant committed the charged offense within three years of being released from prison — is not an element or ingredient of the charged offense.[1] Williams v. State, 143 So.3d 423, 424 (Fla. 1st DCA 2014), rev. denied, 157 So.3d 1052, 2014 WL 6977641 (Fla. Dec. 9, 2014). The same reasoning applies to HVFO sentencing, where the key pertinent fact is *1017 whether the defendant has a prior conviction for one of the felonies enumerated in section 775.084(l)(b)l., Florida Statutes. See Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (holding “Other than the fact of a prior conviction, any fact that .increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.”) (emphasis added); Luton v. State, 934 So.2d 7, 9-10 (Fla. 3d DCA 2006); McBride v. State, 884 So.2d 476, 478 (Fla. 4th DCA 2004). Accordingly, we hold Al-leyne does not apply to HVFO sentencing.
AFFIRMED; REMANDED with directions.
LEWIS, C.J., concurs.
BENTON, J., dissents with opinion.

. Our decision m Williams was published a£-ter briefing concluded in this case. •